UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RANDY MORGAN, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| v. | ) | No. 1:20-cv-00069-JDL |
| | ) | |
| OCEAN WARRIOR FISHERIES, | ) | |
| LLC, et al., | ) | |
| | ) | |
|     *Defendants* | ) | |

*MEMORANDUM DECISION AND ORDER ON MOTION FOR EXPEDITED TRIAL ON CLAIM FOR MAINTENANCE AND CURE*

In this maritime personal injury matter, plaintiff Randy Morgan, who alleges that he was injured while working aboard the commercial fishing vessel *Ocean Warrior* (the "Vessel"), owned and/or operated by defendants Ocean Warrior Fisheries, LLC ("Fisheries") and David Pottle (together, the "Vessel owners"), seeks an expedited bench trial of three of his six claims, those for maintenance and cure (Count IV), the wrongful withholding of maintenance and cure (Count V), and punitive damages based on that alleged wrongful withholding (Count VI) (collectively, the "maintenance and cure claims"). *See* Motion for Expedited Trial on Claim for Maintenance and Cure ("Motion") (ECF No. 14). Because the requested severance would not preserve the defendants' right to a jury trial on the maintenance and cure claims and, in any event, would not promote judicial economy, I deny the Motion.

**I. Factual and Procedural Background**

The plaintiff filed the instant complaint on March 2, 2020, alleging that, on August 30, 2019, while he was acting in the course of his employment as a crewman of the Vessel, he was injured when a boom carrying 20 to 30 empty lobster crates collapsed on him. Complaint and

1

Demand for Jury Trial – in Admiralty ("Complaint") (ECF No. 1) ¶¶ 6, 10-18.  He asserted that he suffered physical injuries including, but not limited to, a fractured and crushed C-2, a torn rotator cuff in his left shoulder, nerve damage, and other neck, arm, and musculoskeletal injuries. *Id*. ¶ 19.  He further alleged that, despite repeated demands, the Vessel owners had refused to pay maintenance and cure, obliging him to obtain counsel and file suit.  *Id*. ¶¶ 48-51.

On January 24, 2020, the plaintiff's counsel represented in an email to the defendants' counsel that it had "been nearly 5 months since the date of the accident and Mr. Morgan has not received any maintenance payments[.]"  January 24, 2020, Email Thread, Exh. A (ECF No. 14-1) to Motion, at [1].  He requested that the Vessel owners "confirm that [they] . . . will be responsible for Mr. Morgan's medical expenses related to his injury aboard the Vessel."  *Id*.[1]

On February 6, 2020, the plaintiff's counsel wrote to the defendants' counsel, in pertinent part, the following:

> I understand that Mr. Pottle chose to continue paying Mr. Morgan his normal crewman share for the vessel's catch even after Mr. Morgan's injury until the vessel stopped fishing at the beginning of December.  Mr. Pottle had no legal obligation to continue to pay Mr. Morgan's income from the vessel while Mr. Morgan was injured and off the vessel but Mr. Pottle made the choice to do so.  We can discuss later whether any settlement or judgment is reduced by the sum of the checks from Mr. Pottle to Mr. Morgan from September-December, but these checks undoubtedly were not maintenance payments to Mr. Morgan and do not fulfill Mr. Pottle's maintenance obligation.

February 6, 2020, Email Thread, Exh. B (ECF No. 14-2) to Motion, at [3].[2]  The plaintiff's counsel stated that his client was then owed "$8,000 for back maintenance, and $350/week for maintenance

---

[1] "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughn v. Atkinson*, 369 U.S. 527, 531 (1962).  Specifically, "[m]aintenance is a substitute for the seamen's free shipboard food and lodging" while "[c]ure is the equivalent of the medical attention the seaman would be entitled to receive while at sea."  *Kirk v. Allegheny Towing Inc*., 620 F. Supp. 458, 462 (W.D. Pa. 1985).

[2] Beginning on September 13, 2019, and ending on December 10, 2019, defendant Fisheries paid the plaintiff "$89,126.71, by a series of thirteen checks written to him, and each cashed by him."  Defendants' Objection to Plaintiff's Motion for Expedited Trial on Claim for Maintenance and Cure ("Response") (ECF No. 17) at 1.

2

going forward until Mr. Morgan reaches maximum medical improvement." *Id*. (emphasis omitted). He also represented that "[m]ost of the [medical] bills are already past due or are final notices[,]" reiterating his request "that Mr. Pottle pay all of these bills ASAP pursuant to his 'cure' obligation." *Id*. at [2] (emphasis omitted); *see also*, *e.g.*, Northern Light Invoice dated October 8, 2019, Exh. B at [10] (showing an amount "past due" of $21,507.84).

In follow-up emails to the defendants' counsel on February 18 and 27, 2020, the plaintiff's counsel continued to demand the payment of maintenance and cure, itemizing sums past due and, with respect to maintenance, due going forward. *See* February 18, 2020, Email Thread, Exh. C (ECF No. 14-3) to Motion, at [1]; February 27, 2020, Email Thread, Exh. D (ECF No. 14-4) to Motion, at [1]. The plaintiff's counsel represented that, as of February 27, 2020, his client was owed "cure" of $40,000 for medical expenses and $1,300 for related travel expenses and nearly $13,000 in maintenance payments. Exh. D at [1].

On March 2, 2020, the plaintiff filed the instant suit, pressing claims against the Vessel owners for negligence under the Jones Act (Count I), unseaworthiness (Count II), maintenance and cure (Count IV), failure to pay maintenance and cure (Count V), and punitive damages as a result of their refusal to pay maintenance and cure (VI). Complaint ¶¶ 29-37, 43-54. He also asserted a maritime tort claim against defendant Lighthouse Lobster & Bait, LLC ("LLB"), whom he alleges assisted in the boom project in which he was injured (Count III). *Id*. ¶¶ 38-42. He demanded a trial by jury of all counts of his complaint. *See id*. at 10 (citing 46 U.S.C.A. § 30104) ("A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer.").

On May 29, 2020, the plaintiff filed the instant motion for an expedited bench trial on his maintenance and cure claims, then totaling $19,383 for maintenance (plus $497 per week going forward) and $41,730.53 in outstanding medical bills and expenses, with additional bills and expenses anticipated. Motion at 3-4, ¶¶ 10-11. He maintains that the immediate payment of maintenance and cure is necessary to defray significant financial hardship and to allow him to obtain medical treatment of his injuries until he reaches maximum medical improvement. *Id*. at 4, ¶ 12. He asserts that, until he reaches maximum medical improvement, the "extent of [his] damages described in Counts I through III of his Complaint recoverable under the Jones Act, the General Maritime Law of Unseaworthiness, and Maritime Tort for loss of earnings, future medical treatment, permanent physical impairment, and loss of future earning capacity cannot be established to any reasonable degree of probability." *Id*. at 5, ¶ 15. Therefore, he asserts, "the maintenance and cure claims must be tried first in this matter." *Id*.

The defendants object to the requested bifurcation, arguing that the plaintiff's claim of inability to pay for medical treatment is disingenuous in that he has received a total of $89,126.71 in payments from Fisheries since his injury, far in excess of the amount to which he claims he is entitled in maintenance and cure, and that separate trials would cause "unnecessary duplication, expense, and legal complexity involving the preclusive effect, if any, of the Court's previous findings." Response at 1-4. They further contend that the requested relief would violate their right to a jury trial on the maintenance and cure claims in contravention of Federal Rule of Civil Procedure 42(b). *See also* [Defendants'] Memorandum on Legal Issues ("Dfts' Memo") (ECF No. 28) at 12.

## II. Applicable Legal Standard

Federal Rule of Civil Procedure 42(b) provides, in pertinent part:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).  "A proper demand [for a jury trial] may be withdrawn only if the parties consent."  Fed. R. Civ. P. 38(d).  "The party moving for bifurcation bears the burden to show that it will meet these [Rule 42(b)] criteria."  *Goldenson v. Steffens*, No. 2:10-cv-00440-JAW, 2014 WL 3105033, at *1 (D. Me. July 7, 2014).

The decision to bifurcate "is a matter peculiarly within the discretion of the trial court[.]" *Gonzalez-Marin v. Equitable Life Assurance Soc'y of U.S.*, 845 F.2d 1140, 1145 (1st Cir. 1988); *see also Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) ("We are unlikely to question the trial court's discretion in making such rulings if they are based on any adequate reason apparent from the record." (citation and internal quotation marks omitted)).  Several factors guide the court's decision:

> (1) whether a separation of the issues for trial will expedite disposition of the action; (2) whether such separation will conserve trial time and other judicial resources; (3) whether such separation will be likely to avoid prejudice to any party at trial that may occur in the absence of separation; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings.

*Thayer v. E. Me. Med. Ctr.*, Civil No. 9-19-B-K, 2010 WL 2361995, at *1 (D. Me. June 9, 2010) (citation and internal quotation marks omitted).

While "[t]he piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course[,]" 9A Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. Supp. Apr. 2020), "it is important that it be encouraged where experience has demonstrated its worth[,]" Fed. R. Civ. P. 42 advisory committee's note to 1966 amendment.

5

### III. Discussion

In seeking bifurcation, the plaintiff overlooks Rule 42(b)'s explicit instruction that, "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Here, the plaintiff is entitled to a trial by jury pursuant to statute, *see* 46 U.S.C. § 30104, and he has made a proper demand, preserving the right as to all counts of his complaint, *see* Complaint at 10; Fed. R. Civ. P. 38(b), (d). The defendants do not consent or stipulate to the plaintiff's withdrawal of his request for a jury trial as to his maintenance and cure claims, instead "expressly maintain[ing] and insist[ing] on their right to a jury trial." Dfts' Memo at 12 (footnote omitted).

The First Circuit has explained:

> Fed.R.Civ.P. 38(a) provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." *Any* party can preserve its right to a jury by making a timely demand for a jury trial, Fed.R.Civ.P. 38(b), and once the demand is made, *both* parties must consent before it can be withdrawn, Fed.R.Civ.P. 38(d), 39(a). . . .

*Concordia Co. v. Panek*, 115 F.3d 67, 69 (1st Cir. 1997) (emphasis in original).

The plaintiff has not withdrawn his demand for a jury trial as to all claims, and the defendants have not consented to such a withdrawal. The plaintiff, nonetheless, takes the position that a trial by jury is not afforded to a standalone claim for maintenance and cure. *See* Memorandum of Law Addressing Supplemental Legal Issues Pertaining to Plaintiff's Motion for Expedited Trial on Claim for Maintenance and Cure ("Plt's Memo") (ECF No. 29) at 12-14. Yet, if the plaintiff sought a bench trial on these claims, he could have so indicated in his complaint. Fed. R. Civ. P. 38(c) ("In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable."). He

did not do so, and cannot, without the defendants' consent, turn back the hands of time. *See, e.g.*, *Panek*, 115 F.3d at 69.

The plaintiff next contends that, "where 'both parties using different triers of fact, could prevail on their respective claims without prejudicing the other party or arriving at inconsistent results[,]' courts have allowed a separate jury trial for the common law claim and a bench trial for the admiralty claim, acknowledging the lack of a constitutional right to a jury trial in admiralty cases but preserving the right to a trial by jury whenever possible." Plt's Memo at 13 (quoting *Panek*, 115 F.3d at 71). In *Panek*, however, the court affirmed the trial judge's denial of the defendant's request for a jury trial of his common-law counterclaims on the basis that the defendant had waived his right to a jury trial. *See Panek*, 115 F.3d at 68, 71, 73. The plaintiff does not argue that the defendants have forfeited that right, and they expressly contend that they have not.

This is dispositive in the defendants' favor of the question of whether bifurcation is proper in this case. However, even assuming, *arguendo*, that ordering a separate trial would not run afoul of the defendants' right to a jury trial, bifurcating the maintenance and cure claims would not serve the ends of convenience, avoidance of prejudice, expedition, or economy.

First and foremost, it is undisputed that, since the accident, the plaintiff has received and cashed checks from Fisheries totaling nearly $90,000, nearly $30,000 more than the sum he claims he is owed for maintenance and cure. The plaintiff maintains that "[b]ecause Defendants have treated these payments as income rather than maintenance and cure, Plaintiff has done the same to date and will do so when he files his taxes for 2019." Plaintiff's Reply to Defendants' Objection to Plaintiff's Motion for Expedited Trial on Claim for Maintenance and Cure ("Reply") (ECF No. 20) at 4. The defendants contend that, the plaintiff having conceded that they had no obligation to pay that money, there is no reason it cannot be characterized as maintenance and cure. *See* Dfts' Memo at 10-12.

7

Regardless of the correct characterization of those payments, the fact that the plaintiff received them substantially undercuts his bid to bifurcate claims on the basis of the avoidance of any undue prejudice to him.[3] The plaintiff asserts that, because those payments were the sole funds he had available after the accident, he "no longer has the funds to pay his ongoing living expenses and the over $40,000 of medical expenses incurred to date." Reply at 4. However, in the absence of any legal entitlement to wages, the plaintiff received substantially more than he argues should have been paid in maintenance and cure.

Nor, finally, does the plaintiff carry his burden to demonstrate that separate trials would serve the ends of judicial economy or efficiency. The parties dispute whether the plaintiff was sufficiently at fault to relieve the Vessel owners of the duty to pay maintenance and cure, with the plaintiff strenuously arguing that they cannot meet that heavy burden. *Compare* Response at 4; Dfts' Memo at 1-4 *with* Reply at 6-7; Plt's Memo at 2-7. Yet, all of the plaintiff's claims will require resolution of what transpired on August 30, 2019, including the degree of the plaintiff's fault, if any. To bifurcate the maintenance and cure claims, as the plaintiff requests, would require duplicative fact and possibly expert testimony regarding the degree, if any, of the plaintiff's fault as well as the extent to which he has reached maximum medical improvement. The Supreme Court has counseled against such a result. *See*, *e.g.*, *Carolina Clipper Inc. v. Axe*, 902 F. Supp. 680, 682-83 (E.D. Va. 1995) (quoting *Fitzgerald v. U.S. Lines Co.,* 374 U.S. 16, 21 (1963), for the proposition that "only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments. . . . [A] maintenance and cure claim joined with a Jones Act claim must be submitted to the jury when both arise out of one set of facts.").

---

[3] For purposes of resolution of the instant motion, I need not, and do not, express any opinion on the appropriateness of the parties' competing characterizations of the money paid to the plaintiff following his accident.

Thus, even if bifurcation did not run afoul of the defendants' right to a jury trial, the plaintiff has not sustained his burden to show that he would be unduly prejudiced in the absence of bifurcation or that bifurcation would comport with the ends of judicial economy and efficiency.

## IV.  Conclusion

For the foregoing reasons, the Motion is **DENIED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 29th day of August, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge